UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK_____
MALIK MITCHELL

                Plaintiff,

      -against-

THE CITY OF NEW YORK,
DETECTIVE ROBERT PATTERSON;
POLICE OFFICER MURPHY
(Tax Reg Number 953162).

                Defendants

--------------------------------------------------------

                **COMPLAINT**

                **PLAINTIFF DEMANDS
A TRIAL BY JURY**

        Plaintiff Malik Mitchell, by his attorneys Law Office of Edward J. Muccini

PC, as and for his Complaint, hereby alleges as follows, upon information and belief:

### NATURE OF ACTION

      1.  This is a civil rights action filed pursuant to 42 USC §§ 1983 and 1988, and

corresponding claims under New York common law, by which MALIK MITCHELL seeks to

recover compensatory and punitive damages from the defendants with respect to his false arrest

on or about November 24, 2020 and malicious prosecution on multiple felony counts of Assault

in the Second Degree and related crimes, which caused him to be incarcerated for about 4 days

and maliciously prosecuted for several months until the Queens County District Attorney

("QCDA") moved to dismiss all charges.

### FACT SUMMARY

      2.  On November 17, 2020 at approximately 2:50 PM inside of 17-019

Hillside Avenue, Queens County, City and State of New York, which was an IHOP

restaurant, Jannetty Ramos was slashed on her elbow by a male patron of the restaurant who

was refused service because he did not have face mask.  NYPD was notified to respond to the

scene. The entire incident, including the verbal argument between the male patron and Ms. Ramos and other employees, was captured at various angles on video cameras located inside the IHOP.

3.   When police arrived at the scene, Police Officer Murphy of the 107 Precinct (Tax Reg Number 953162) apparently looked at a still shot from the video of the incident and was of the opinion that the male who slashed Ms. Ramos with a knife was Plaintiff Malik Mitchell because he had arrested Malik Mitchell in the past and claimed that he recognized Malik Mitchell as being the slasher.

4.   Based upon Officer Murphy's opinion, Detective Robert Patterson investigated Malik Mitchell. Pursuant to his investigation, a prior photo of Malik Mitchell was discovered and placed in a photo array.

5.   On November 24, 2020, Detective Robert Patterson prepared a photo array for the victim Jannetty Ramos to view.  After viewing the photo array, defendant Patterson and other police officers created official police reports that reflected that Ms. Ramos unequivocally and positively identified Malik Mitchell as the person who slashed her with the knife.

6.   Based upon the aforementioned photo array identification a *Wanted Poster* was created by the NYPD with Malik Mitchell's photo displayed as the person *Wanted* for felony Assault.

7.   A friend of Malik Mitchell saw the *Wanted Poster* and told Malik Mitchell that he was wanted by NYPD for a felony assault.

8.   Malik Mitchell contacted his criminal attorney Joseph Amsel who arranged for his surrender to the 107 Precinct.

9. On November 24, 2020 after surrendering to the NYPD at the 107

Precinct, Plaintiff Malik Mitchell was arrested for Assault in the Second Degree and related

charges and subsequently imprisoned at Rikers Island for four days.

10. The conditions at Rikers Island were cruel and inhuman. During the height

of the COVID-19 pandemic, Plaintiff Malik Mitchell was placed for days in a holding cell

with many other inmates and was forced to sleep on the floor or a hard bench with no pillows

or blankets.

11. When Malik Mitchell was incarcerated at Rikers Island, the pandemic was

at its peak.  The other inmates in the crowded holding cell were coughing and sneezing on

each other while standing, sitting and laying side by side for days.

12. Malik Mitchell was denied proper medical care and medication for days

for his serious and possibly fatal blood clot condition for days despite repeated requests to

officers for medical attention.

13. On November 24, 2020, at the arraignment of Malik Mitchell, counsel for

Malik Mitchell showed the Assistant District Attorney several recent photographs of Mr.

Mitchell *side by side* with the still photographs of the male slasher in the video at IHOP.  To

any reasonable person, it was patently clear that Malik Mitchell was not the person in the

video at the IHOP.  Other than being a black male with a similar body type, Malik Mitchell's

facial features were different in all respects with the male in the video.

14. Despite the obvious differences in facial features, the QCDA ignored the

patent and obvious evidence that Mr. Mitchell was not the assailant and argued to the Court

for excessive bail which was granted by the Court.

15. Malik Mitchell could not post the excessive bail/bond and remained

incarcerated until November 27, 2020. The arraignment Court adjourned the matter to

November 27, 2020 for the CPL "180.80 day", which was the day the People were required

to indict Mr. Mitchell or he would be released.

16. On November 27, 2020, after viewing the side by side photos prepared by

Mitchell's counsel, the QCDA decided to postpone presenting the case to the Grand Jury and

further investigate the matter.  Accordingly, Malik Mitchell was released from custody on

November 27, 2020.

17. Upon information and belief when the Assistant District Attorney was

preparing the case for the Grand Jury before the 180.80 day, Ms. Ramos and another witness

conveyed that each witness was not confident in their respective identifications of plaintiff

Malik Mitchell.

18. Upon information and belief, Ms. Ramos conveyed that when viewing the

photo array, she believed that plaintiff Malik Mitchell most resembled the perpetrator of the

crime in relation to the other photos in the array. No police reports prepared by individual

defendant Detective Patterson or other officers reflected this exculpatory information.

19. Upon information and belief, a second witness Jarryd Smith indicated to

the QCDA and police that he was not confident that plaintiff Malik Mitchell was the

perpetrator.

20. Despite the aforementioned clear exculpatory information, the QCDA

continued to prosecute the plaintiff Malik Mitchell for this violent felony offense for

approximately seven (7) months.

21. On June 7, 2021 the QCDA dismissed the criminal case against Malik

Mitchell with prejudice.

22. Defendant City of New York and defendant Patterson and fellow police

officers with said exculpatory information were duty bound to disclose to the QCDA the

exculpatory nature of Ms. Ramos' purported identification of Malik Mitchell in the photo

array and the failure to disclose the aforementioned statement of Ms. Ramos to the QCDA

resulted in the false arrest, false imprisonment and the initiation of the malicious prosecution

of Plaintiff Malik Mitchell.

23. The defendants knew and understood or should have known that the

QCDA was relying on the truthfulness of the claims and statements of Defendants well as the

absence of any of the above exculpatory evidence, in order to determine whether to

commence a criminal prosecution against the plaintiff, and that the QCDA would proceed on

the assumption that should any such evidence exist, the defendants would promptly notify the

QCDA as required.

24. At no time did the Defendant NYC, Detective Patterson or other police

officers take any steps to inform the QCDA about any of the deficiencies in the witnesses

supposed identification of plaintiff to bring about the false identification of plaintiff as the

slasher.

25. Defendants and other police officers were aware of their own misconduct

and/or that of each other, yet, at no time did any of the defendants, or any other member of

the NYPD, take any steps to intervene in, prevent, or otherwise limit the illegal, unlawful and

unconstitutional conduct engaged in by their fellow officers.

26.    That at all times relevant herein, the defendants were acting within the

scope of their employment, under color of law and their acts were done in furtherance of the

City of New York's interests and without legal justification or excuse.

**PARTIES VENUE AND JURISDICTION**

27.    At all times hereinafter mentioned, plaintiff Malik Mitchell was an

adult male resident of Queens County, in the State of New York.

28.    At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

29.     At all relevant times hereinafter mentioned, defendant Detective

Robert Patterson was a member of the NYPD with the rank of Detective, and was assigned

to the 107 precinct. Patterson is sued herein in his official and individual capacities.

30.     At all relevant times hereinafter mentioned, defendant Police Officer

Murphy (Tax Registration Number 953162) was a member of the NYPD, and was assigned

to the 107 precinct. Murphy is sued herein in his official and individual capacities.

31.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§

1331,1343 and 1367, and 42 U.S.C. § 1983.

32.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et <u>seq</u>. in

the Eastern District of New York, where the plaintiff and defendant City of New York

reside, and where the majority of the actions complained of herein occurred.

33.     A Notice of Claim was timely served by the plaintiff upon the defendant

City of New York.


## FIRST CAUSE OF ACTION

### §1983 Claims of False Arrest and Imprisonment, Malicious Prosecution, and Denial of a Fair Trial

Plaintiff repeats the allegations contained above as though stated fully herein.

34.     The City and individual defendants willfully and intentionally seized and

arrested plaintiff without probable cause, and without a reasonable basis to believe such cause

existed, or otherwise failed to intervene while their fellow officers engaged in this

unconstitutional conduct.

35.     The individual defendants fabricated false police reports indicating that Ms. Ramos positively identified Plaintiff Malik Mitchell as the assailant and withheld that Ms. Ramos only identified Malik Mitchell as looking more like the assailant than the other photos in the array. The individual defendants then withheld these facts and their own conduct from the QCDA. To the extent that either of the individual defendants did not affirmatively engage in such conduct, that defendant remained aware of these events and facts and failed to take any corrective steps or otherwise intervene in his co-defendant's misconduct despite ample opportunity to do so during the time plaintiff was prosecuted.

36.     By doing so the individual defendants fabricated and deliberately withheld evidence and misled prosecutors in order to manufacture probable cause for the plaintiff's arrest and prosecution, and to cover up their unlawful conduct in procuring the false identification, or otherwise failed to intervene while their fellow officers engaged in this unconstitutional conduct.

37.     Individual Defendants Patterson and Murphy arrested and or caused the arrest of Malik Mitchell despite the fact that Malik Mitchell does not have similar or the same features as the perpetrator  in the IHOP videos. The photo array containing Malik Mitchell's photo was the result of the defendants malicious, careless and reckless conduct.

38.     The defendant and the QCDA were made aware by Plaintiff's criminal attorney and defendants and the QCDA should have known that the assailant in the IHOP video did not resemble Plaintiff Malik Mitchell and in fact Malik Mitchell's facial features and hair was patently and obviously different than the assailant's features in the IHOP video. Yet, despite the obvious difference in features between the two men, relying on the fabricated and false information provided by the defendants, the QCDA requested excessively high bail/bond to the arraignment Court which caused the Court to set high bail that Malik Mitchell could not post and resulted in the imprisonment of Malik Mitchell for a crime hie did not commit.

39.     Based upon the fabricated and false information and police reports provided by the individual defendants and despite the obvious facial differences between Malik Mitchell and the assailant in the IHOP video, Malik Mitchell was maliciously prosecuted for seven months.

40.     The defendants, individually and collectively, subjected the plaintiff to (i) false arrest and imprisonment, (ii) malicious prosecution, and (iii) denial of due process and his right to a fair trial through the fabrication of evidence, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

41.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings and financial injury, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

### (§1983 Monell Claim against defendant City of New York)

42.     Plaintiff repeats the allegations contained above as though stated fully herein.

43.     Prior to plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning, in part, the continuing duty of police investigators to preserve and to make timely disclosure to prosecutors during criminal investigations and prosecutions of all material evidence or information (often referred to as "Brady material") favorable to a person suspected,

accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the prosecuting attorney could comply with his/her constitutional and statutory obligation to disclose such information to the defense.

44.     The foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the defendant City of New York, amounting to deliberate indifference to the Constitutional rights of persons, including plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities. Prior to plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning, in part, the continuing duty of police investigators to preserve and to make timely disclosure to prosecutors during criminal investigations and prosecutions of all material evidence or information (often referred to as "Brady material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the prosecuting attorney could comply with his/her constitutional and statutory obligation to disclose such information to the defense.

42.                    The aforesaid deliberate or *de facto* policies, procedures, regulations,

practices and/or customs (including the failure to properly instruct, train, supervise and/or

discipline employees with regard thereto) were implemented or tolerated by policymaking

officials for the defendant City of New York who had actual or constructive knowledge that Prior

to plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the

constitutional rights of individuals suspected or accused of criminal activity, to the risk of

arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects

and defendants to due process and a fair trial, implemented plainly inadequate policies,

procedures, regulations, practices, customs, training, supervision, and discipline concerning, in

part, the continuing duty of police investigators to preserve and to make timely disclosure to

prosecutors during criminal investigations and prosecutions of all material evidence or

information (often referred to as "Brady material") favorable to a person suspected, accused or

convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence

that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that

a prosecution witness has made inconsistent statements about material facts, and evidence that

a prosecution witnesses has a motive, bias or interest affecting his credibility or has been

pressured or coerced, so that the prosecuting attorney could comply with his/her constitutional

and statutory obligation to disclose such information to the defense. The aforementioned

policies, procedures, regulations, practices and/or customs concern issues that regularly arise in

the investigation and prosecution of criminal cases, and understood that such issues often present

police employees with difficult choices of the sort that instruction, training and/or supervision

will make less difficult or that the need for further instruction, training, supervision and/or

discipline was demonstrated by a history of misconduct or mishandling by NYPD members, as

well as incentives that NYPD members have to engage in misconduct, and that such poor

decision making or misconduct by NYPD members will frequently cause the deprivation of the constitutional rights of criminal suspects or defendant.

43.       The municipal defendant was thus aware and has been aware of these ongoing issues, and there is credible evidence as articulated in a decision issued in the Eastern District of New York in *Collins v. City of New York*, 11 CV 766 (FB) (RML), that such misconduct (i.e., the failure to disclose Brady material) was tolerated by the municipal defendant at 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013).

44.       The municipal defendant, acting through the NYPD and its executive officers, has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of Brady material.

45.       During all material times herein, the municipal defendant owed a duty to the public generally, and the plaintiff in particular, which the defendant knowingly and intentionally breached, or to which it was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

46.       By reason thereof, the municipal defendant has violated 42 U.S.C. ¬ß1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings and financial injury, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

**(State Law Claims of False Imprisonment, Malicious Prosecution, and Denial of a Fair Trial, against all defendants)**

47.          Plaintiff repeats the allegations contained above as though stated fully herein.

48.          Plaintiff was subjected to malicious prosecution, false imprisonment, and the denial of due process and his right to a fair trial by the defendants.

49.          At no time did the defendants have any legal basis for imprisoning plaintiff, or commencing criminal process against him, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

50.          Defendants' fabrication of evidence, deliberate withholding of evidence, and intentional misleading of the QCDA was unlawful, and there was no reasonable basis by which defendants could have believed said conduct was lawful, reasonable, or otherwise appropriate.

51.          The defendants are therefore liable under state law to plaintiff for false imprisonment malicious prosecution, and the denial of due process and his right to a fair trial.

52.          The municipal defendant is vicariously liable to the plaintiff for the acts of its employees and agents.

53.          By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings and financial injury, incarceration and the deprivation of liberty.

## DEMAND FOR A JURY TRIAL

54.          Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

a. On the first cause of action, actual and punitive damages in an amount to be determined at trial;

b. On the second cause of action, actual damages in an amount to be determined at trial;

c. On the third cause of action, actual and punitive damages in an amount to be determined at trial; statutory attorney's fees pursuant to, inter alia, 42 U.S.C. 1988 and New York common law, disbursements, and costs of the action;

d. And such other relief as the Court deems just and proper.

Dated: February 15, 2022
     Queens, New York

*/s/ Edward J. Muccini*
Edward J. Muccini
LAW OFFICE OF EDWARD J. MUCCINI PC
24203 Northern Blvd
Douglaston, New York 11363
T: (718) 225-0205
Edwardmuccini@gmail.com